## No. 6721.

STATE EX REL. ELLA SMITH ET AL. VS. JUDGE OF THE SECOND DISTRICT COURT, PARISH OF ORLEANS.

A judgment debtor, who having applied for a suspensive and a devolutive appeal in the alternative, elects to take the devolutive appeal, and gives the bond fixed by the court for that appeal, forfeits his right to a suspensive appeal, and therefore is not entitled to a writ of prohibition to arrest the execution of the judgment.

To suspensively appeal from a judgment which orders the delivery of movables and immovables, the amount of the appeal bond should exceed by one half the estimated value of the movables, and of the revenues to be derived from the real estate pending the suit.

APPEAL from the Second District Court, parish of Orleans. Tissot, J.

Kennard, Howe & Prentiss and A. & W. Voorhies, for relator and appellant.

E. H. Farrar, for respondent.

The opinion of the court was delivered by

DEBLANC, J. The parties, in this case, are George W. Bancker, who-

State ex rel. Ella Smith vs. Judge of the Second District Court.

appears in his own name and as executor of the last will of Henry Fass-
man, and Mrs. Bancker and Mrs. Smith, children of said deceased. In
their petition for a prohibition we find Bancker's admission "that,
within ten days from the signing of the judgment by which he complains
that he has been aggrieved, he, individually and as executor, moved for
a suspensive and devolutive appeal, in the alternative, and, being unable
to furnish bond in the amounts required by the court for a suspensive
appeal, he actually filed, within the aforesaid delay, his two bonds, in
the amount fixed for the devolutive appeal.

Whatever were or may have been, under his application for an appeal,
his rights, the nature and extent of those rights, he has, by his submis-
sion to, and compliance with that part of the order of court granting a
devolutive appeal, not only exercised, but exhausted his rights, and in
as much as he can not be allowed two appeals from the same judgment,
he can not be relieved from the effects of his own act, his own choice.
It matters not that he has furnished bond during the delay within which
he could have taken and did take a suspensive appeal. The bond then
given by him is that which was fixed for the devolutive appeal, and no
proceeding of his has or could have suspended the execution of the
judgment. 12 R. R. p. 322.

If he considered as unlawful the condition imposed, the amount of
the bond required by the lower court, to authorize a suspensive appeal,
he should have applied for the redress he now seeks to obtain, before
perfecting the other, the devolutive appeal. We can neither change the
name, nor extend the effects of his appeal.

Had he, within the prescribed delay, applied for and been allowed " *an*
*appeal,*" without coupling with that term the qualification " devolutive,"
he might successfully invoke the presumption that the object of an ap-
peal is, generally, to suspend a judgment until its revision by the appel-
late tribunal; but, this he did not do; he was allowed, in the alternative,
a suspensive and a devolutive appeal. He availed himself of the latter,
and, impliedly at least, renounced to the former.

Can we, distorting the plain signification of the qualification which
fixes the character of his appeal, decide that he intended to do other-
wise than he has done, that he intended to take, and, because he so in-
tended, he should be allowed another, a different appeal, one for which
he gave no bond, neither that required by the court, nor any other, one
which he abandoned and why? He was unable to furnish the required
obligation. He so stated himself.

As to Mrs. Smith and Mrs. Bancker, what are the facts? As testa-
mentary executor of Henry Fassman, George W. Bancker was ordered
by the Second District Court to file an additional, a third account of his
administration. He obeyed that order, filed an account, the homologa-

tion of which was opposed by Victor E. and Frank Fassman, as heirs and creditors of the aforesaid deceased. To these proceedings neither Mrs. Smith, nor Mrs. Bancker were made parties, either by an actual or constructive citation. Judgment was rendered partly in favor of Bancker and partly in favor of the opponents.

Within ten days of the signing of said judgment, Mrs. Bancker and Mrs. Smith applied for and obtained an unqualified appeal, and, within ten days, they furnished bond in the amount fixed by the lower court, fifteen hundred dollars. They now contend and defendants deny that said appeal suspends the execution of the judgment.

There can be no doubt that the judgment appealed from does not answer the description of that referred to in the 575th article of the Code of Practice. It is not, as against Bancker or any one of the appellants, a judgment for any specific sum. It orders the classification, not the payment of two judgments previously obtained before another court, by the two opponents, and which, then, had already acquired the force and effect of *res judicata*, and that order did not authorize the court to require the bond mentioned in said article.

This, however, is not the only difficulty which we are called upon to solve. Though the judgment appealed from embraces twenty distinct decisions on not less than twenty oppositions, it is but one judgment, and relators have appealed, not as they might perhaps have been allowed to do, from any specified or separate decision included in that general decree, but from the judgment, and, of course, from every part, every branch of the same. Considering the pleadings and the decree, is their appeal a suspensive or a devolutive appeal?

Two of the decisions comprised in the general judgment, command:

The first, that, in his next account as executor of Fassman's will, Bancker shall substitute, in lieu of $25,000, the alleged price of a sale avoided by said judgment, the property described in the act of sale, a cotton press and the ground on which it is built, and, besides, the revenues of said property since the thirteenth of July 1872.

The other, an inventory of the movables claimed as belonging to the succession of Fassman, and which, it is alleged, Bancker has converted to his own use.

The sale of the cotton press was declared a mere simulation, intended to cover the unlawful title which, apparently, passed from Bancker, as an executor, to Bancker, as an individual, and according to the pleadings and the judgment appealed from, the whole of said property, the most of which is of a perishable nature, is in Bancker's possession. To have suspensively appealed from the decree which orders the delivery of that property to the succession, what bond should have been given? One exceeding by one half the estimated value of the movables, and of

the revenues to be derived from the real estate, during the suit. C. P. 577.

We learn from the judge's answer to this rule, that the personal property, the inventory of which he ordered, was variously estimated at from two to fifteen thousand dollars, and the revenues of the cotton press, those already realized, and those that may accrue during this litigation, at $30,000. To protect the succession of Fassman, his heirs and creditors against the possible loss, the inevitable deterioration of the property which the suspensive appeal would leave in possession of one who, according to the decree, is not entitled to that possession, to protect the interested parties against the injury which may be caused by that appeal, a bond of fifteen hundred dollars is not sufficient. 22 An. 589. 27 An. 334.

The rule *nisi* granted on the thirteenth of October 1877, is, therefore, discharged at the costs of relators.